UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PABLO E. SANCHEZ FERNANDEZ,

Petitioner,

v. Case No. 3:26-cv-2187-MMH-PDB

WARDEN, NORTH FLORIDA DETENTION CENTER, et al.,

Respondents.

---

# ORDER

## I. Status

Petitioner Pablo E. Sanchez Fernandez, an immigration detainee, initiated this action by filing a pro se Petition for a Writ of Habeas Corpus (Doc. 1) on August 25, 2026. Sanchez Fernandez, a citizen of Cuba, was paroled into the United States on March 10, 2008, and adjusted his status to lawful permanent resident on March 4, 2011. Doc. 6-1 at 20. In 2014, following a 2013 conviction for attempted murder, an immigration judge ordered Sanchez Fernandez removed to Cuba. Id. at 20, 22, 23. United States Immigration and Customs Enforcement (ICE) detained Sanchez Fernandez on February 25, 2026, upon completion of his state criminal sentence. Id. at 3, 39.

The Federal Respondent filed a Response to Petition for Writ of Habeas Corpus (Doc. 6) with exhibits (Doc. 6-1). Sanchez Fernandez filed a Reply (Doc. 7). The case is ripe for review.

## II. Analysis

In the Petition, Sanchez Fernandez argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because he has been detained beyond the presumptively reasonable removal period and there is no significant likelihood of removal in the reasonably foreseeable future. See Doc. 1 at 6–8. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to

rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, there is no dispute that when Sanchez Fernandez filed this case, he had been in ICE custody for over six months following his order of removal. See Doc. 6 at 3 (stating that Sanchez Fernandez "has remained detained since February of 2026 for a total of 196 days").[2] Nevertheless, the Federal Respondent contends that the six-month period is tolled because Sanchez Fernandez refused to comply with ICE's attempts to remove him to Mexico. Id. at 3–7.

In support of its contention, the Federal Respondent submits the declaration of a deportation officer who states in pertinent part:

> On April 1, 2013, [Sanchez Fernandez] was convicted of an aggravated felony and sentenced to 15 years imprisonment.
>
> On January 13, 2014, an Order of Removal was entered against [Sanchez Fernandez].
>
> On or about February 25, 2026, [Sanchez Fernandez] was taken into custody by ICE to execute his final order of removal after his release from state custody.
>
> . . . .

[2] Sanchez Fernandez was detained on February 25, 2026, and he filed the Petition 181 days later on August 25, 2026.

> On or about[] February 25, 2026, [Sanchez Fernandez] was nominated for removal to Mexico and removal to Mexico was initiated. [Sanchez Fernandez] was served with and signed a Notice of Removal form, a required document to effectuate third-country removal.
>
> On March 19, 2026, [Sanchez Fernandez] was transferred to Texas to effectuate removal.
>
> On March 20, 2026, [Sanchez Fernandez] failed to comply with removal to Mexico at the Hildago, Texas port of entry and was transferred back to Florida on March 25, 2026.
>
> [Sanchez Fernandez] was re-nominated for removal to Mexico. On April 16, 2026, [Sanchez Fernandez] signed a Notice of Removal to Mexico. [Sanchez Fernandez] was also served an I-229A[[3]] on the same day. [Sanchez Fernandez] was transferred to Texas for removal to Mexico where [Sanchez Fernandez] then decided not to cooperate with the deportation process.
>
> On May 8, 2026, [Sanchez Fernandez] failed to comply with removal to Mexico at the Hidalgo Port of Entry. According to department records, [Sanchez Fernandez] refused to get off the bus. [Sanchez Fernandez] willfully failed and refused to depart the United States to Mexico when directed to do so by a Deportation Officer at the Texas border. [Sanchez Fernandez] was returned to Florida (Baker C.I.) via ICE Air Charter flight on May 19, 2026.
>
> On or about July 10, 2026, removal to Mexico was again initiated. [Sanchez Fernandez] alleged he was previously tricked into signing for removal to Mexico. [Sanchez Fernandez] refused to sign the form, I-229a; therefore, failing to comply with his obligation to assist

[3] The I-229a form is entitled “Warning for Failure to Depart,” and includes an “Instruction Sheet to Detainee Regarding Requirement to Assist in Removal.” Doc. 6-1 at 31–32, 34–35.

> in obtaining a travel document for removal and willfully acting to prevent his removal from the United States.
>
> On or about August 26, 2026, [Sanchez Fernandez] refused to sign the Notice of Removal to Mexico, a required document to effectuate third-country removal.
>
> ICE will follow proper procedures for third-country removals for [Sanchez Fernandez] as set forth in the *Guidance Regarding Third Country Removals*, issued by the DHS Secretary on March 30, 2025.
>
> Removal has been impeded by [Sanchez Fernandez's] refusal to sign required documents and his willful refusal to get off the bus and depart the United States to Mexico when directed to do so by a Deportation Officer. ICE will continue to attempt third-country removal.
>
> Based on the aforementioned and continued engagement, there is a significant likelihood that [Sanchez Fernandez] will be removed in the reasonably foreseeable future.

Id. at 40–42 (enumeration omitted). The Federal Respondent also submits a copy of a signed Notice of Removal to Mexico dated February 25, 2026 (id. at 25); copies of Notices of Removal to Mexico dated April 28, 2026, and August 26, 2026, that ICE alleges Sanchez Fernandez refused to sign (id. at 26, 33); and other documents.

Section 1231(a)(1)(C) explicitly provides for an extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or

acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). When addressing a Zadvydas claim, courts have applied § 1231(a)(1)(C) differently:

> Many courts conduct an analysis using the burden-shifting framework from Zadvydas, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under Zadvydas altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the Zadvydas standard.

Glushchenko v. U.S. Dep't of Homeland Sec., 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly

argue that there is no significant likelihood of removal.'" Singh v. U.S. Att'y Gen., 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)); see Vaz v. Skinner, 634 F. App'x 778, 782 (11th Cir. 2015)[4] ("Because [the p]etitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); Oladokun v. U.S. Att'y Gen., 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting Zadvydas, 533 U.S. at 701).

The Federal Respondent has not shown that Sanchez Fernandez's actions were akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his actions otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). As to the first "removal attempt" on March 20, 2026, the deportation officer fails to describe

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

the circumstances that occurred at the border.[5] Additionally, to the extent that Sanchez Fernandez "refused to get off the bus" on May 8, 2026, it is unclear whether ICE transported him to the border and essentially asked him to voluntarily depart, whether ICE had ever previously communicated with Mexico regarding Sanchez Fernandez, or whether ICE even had an approved plan for removal to Mexico that Sanchez Fernandez actually thwarted. Indeed, the deportation officer describes the process for removing individuals to Mexico, which notably, does not include a requirement that Sanchez Fernandez sign a Notice of Removal, but it does require "final acceptance" from Mexico's Instituto Nacional de Migracion (INM)—which the deportation officer does not say occurred here. Doc. 6-1 at 41. Further, even assuming that Mexico was willing to accept Sanchez Fernandez, the deportation officer does not explain why ICE could not or did not thereafter seek travel documents for Sanchez Fernandez or otherwise plan for his removal to Mexico via a different way.

With respect to Sanchez Fernandez's alleged refusal to sign forms, the documents that he refused to sign are notices to him, not an application for

---

[5] It is unclear from the Declaration whether Sanchez Fernandez was taken to the border and refused to "cooperate" on April 16, 2026, and May 8, 2026, or just on May 8, 2026. See Doc. 6-1 at 41, ¶¶ 18-19. If he was taken to the border on April 16, 2026, the deportation officer likewise fails to explain the circumstances that occurred at the border on that date.

travel documents or a form that would otherwise appear to assist in his removal. Again, the deportation officer's description of third-country removal to Mexico does not include any requirement that Sanchez Fernandez sign a Notice of Removal or an I-229a form:

> [Sanchez Fernandez] will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.
>
> [He] will receive a Notice of Removal to Mexico prior to his transfer to the relevant field office.
>
> The receiving ERO field office will then notify Mexico's [INM] of [Sanchez Fernandez's] upcoming removal to Mexico. Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.
>
> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.

Doc. 6-1 at 40–41. And the Federal Respondent does not explain how Sanchez Fernandez's failure to sign the forms impeded ICE's ability to remove him. Without more, the Court cannot find that Sanchez Fernandez's refusal to sign the forms warrants tolling of the six-month period as urged by the Federal Respondent. Therefore, the Court finds Sanchez Fernandez's six-month period expired prior to the filing of this case.

The Court also finds that Sanchez Fernandez has provided good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future. Indeed, Sanchez Fernandez has now been detained over eight months, but ICE has yet to remove him. He contends that ICE has failed to obtain any travel documents for any country and ICE's ability to remove him to Mexico is speculative because Mexico has not provided any travel documents or officially accepted him. Doc. 1 at 7. Thus, the burden shifts to the Federal Respondent.

The Court finds that the Federal Respondent has not submitted evidence sufficient to rebut Sanchez Fernandez's showing that there is no significant likelihood of removal in the reasonably foreseeable future. The Federal Respondent points to its attempts to remove Sanchez Fernandez to Mexico. See Doc. 6 at 3–7. However, this evidence is unavailing. Detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart does not constitute removal. Instead, it is the exact kind of indefinite detention that Zadvydas sought to prevent.

The Federal Respondent has not provided any evidence to suggest that ICE has actually communicated with Mexico or any other third country regarding Sanchez Fernandez. Nor has the Federal Respondent demonstrated that any travel documents have been sought—let alone obtained—for any country. Based on the evidence, or lack thereof, the Court finds the Federal Respondent has failed to show that there is a significant likelihood Sanchez Fernandez will be removed in the reasonably foreseeable future.

The Court addresses one final point in the Federal Respondent's Response. Without elaboration, the Federal Respondent contends that this Court should not "release[e] a tremendously dangerous criminal back into the populace." Doc. 6 at 7. However, as another judge on this Court recently explained:

> [T]he law is clear—the government cannot use indefinite detention as a stand-in for removal when its removal efforts fail. What is more, there is a procedure for the continued detention of specially dangerous aliens subject to removal, and the government chose not to invoke it. See 8 C.F.R. § 241.14(f). Faithful application of the law as it currently stands allows for only one result—the petitioner's release from custody. Reasonable minds may differ on the wisdom of that result, but changes to the law must come from Congress, not a federal judge.

Alvarez v. South Fla. Det. Facility, No. 2:26-CV-01088-SPC-NPM, 2026 WL 3204376, at *1 (M.D. Fla. Oct. 26, 2026). The government has available to it a process by which to detain "specially dangerous" aliens. See 8 C.F.R. § 241.14(f). The Federal Respondent fails to allege that such process has even been considered in this case.

Accordingly, it is **ORDERED**:

1. Sanchez Fernandez's Petition for a Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Sanchez Fernandez **within 24 hours** of this Order, "subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). At least **five (5) hours** before releasing Sanchez Fernandez, Respondents shall provide Sanchez Fernandez

with access to a telephone to arrange transportation from the detention facility.

2. Respondent Warden's Motion to Dismiss (Doc. 4) is **DENIED**. See, e.g., Fonseca v. Ripa, No. 3:26-CV-309-MMH-MCR, 2026 WL 1072778, *4–5 (M.D. Fla. Apr. 21, 2026).

3. The **Clerk** is directed to terminate any motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of November, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

JAX-3 11/2
c:
pro se Petitioner
Counsel of record